Before STATE INDUSTRIAL COMMISSION, Respondent.

In the Matter of the Claim for Compensation under the Workmen's Compensation Law on Account of the Death of ANTHONY B. GATTOVI, by His Widow, FRANCES GATTOVI, Appellant, *v.* NEW YORK CENTRAL RAILROAD COMPANY, Employer and Self-Insurer, Respondent.

*Workmen's Compensation Law — spotting interstate car left at point of destination a part of interstate movement.*

Appeal from an award and decision of the State Industrial Commission, entered September 6, 1918, denying a claim for compensation.

Decision affirmed. All concur, except Woodward, J., dissenting, with an opinion, in which Kiley, J., concurs.

WOODWARD, J. (dissenting): There is no dispute as to the facts. Plaintiff's intestate at the time of receiving his fatal injuries was employed as a brakeman assigned to a switching crew at Albion, N. Y., by the New York

———

Central Railroad Company. While thus employed he was engaged in switching a car loaded with coal from the main tracks or yard at Albion to an elevated siding in front of the premises of the consignee of said coal car. The car which was being moved had arrived at Albion at nine-fifty P. M. of the previous day, and the shipment of coal originated at Coxton, Penn., consigned to Harold Crowther, a coal dealer at Albion. The car had been dropped out of an interstate train, as suggested above, the previous evening, and at the time of the accident this car was being moved from the point where it was delivered in the yard to an elevator siding, which appears to have been used by several local shippers and, in cases of emergency, by the railroad company itself. In other words, this car which had reached its destination at Albion the night previous was being placed for unloading when the accident occurred, and the State Industrial Commission held that the interstate shipment or movement did not end until the car was so placed, and that there was a custom to deliver coal to this particular consignee at this particular siding. We are of the opinion that the interstate character of the movement ended when the interstate train dropped the car in the yards at Albion and passed on with the remainder of the train. There was a delivery of the consignment at the place of destination, and the fact that a local switching crew undertook to " spot " the car for unloading is of no more consequence in determining the character of the transaction at the time of the accident than would be the acts of individuals in moving the car for the purpose of unloading it. If the consignee had sent men into the yard and had caused them to move the car to a convenient point for unloading there clearly would not have been an interstate movement, and its character is not changed because the defendant, in the practical operation of its facilities, moved this particular car upon a siding provided by local shippers. It was a local switching crew which moved this car, not the interstate train which brought it in. The claimant's intestate had no relation to the car so long as it was a part of the interstate train; his relations commenced some ten or twelve hours after the interstate movement had ended. It is true, of course, that " transportation includes delivery," as said by the Court of Appeals in *N. Y. C. & H. R. R. R. Co.* v. *General Electric Co.* (219 N. Y. 227, 234) but, as said in the same case, " a railroad's duty to carry is a duty to carry over its right of way. Private sidings, owned and maintained by shippers, do not constitute the right of way, and the use that the carrier may be compelled to make of them is subordinate and incidental to the fulfillment of its primary function of carriage along its route." Delivery for the purpose of determining whether a transaction is that of interstate or intrastate commerce must necessarily depend upon when the article of commerce becomes a part of the common property of the State, and this, it seems to us, depends not upon the delivery of the car at a particular spot but upon its having reached its general destination, and there having been detached from the means of interstate communication or transmission. The car in question was directed to Albion. This contemplated, of course, delivery within the yards of the transportation company within the limits of Albion. When this point had been reached, and the car was taken out of

its relation to the interstate train, and had been placed upon a siding, the delivery of the interstate commerce commodity was complete. It was no longer in transit between a point in one State and another; its journey as interstate commerce was at an end. It was going no farther, and all that remained was for a train crew, confined in its operations to moving freight within the yards, to place the cars as the usages and practical requirements of the facilities demanded. The fact that the car moved in interstate commerce yesterday did not change the facts of to-day. On the morning of the accident there was a carload of coal in the yards at Albion. It had no relation to any other car or with any means of transportation. It could move only as it was moved by some agency, and the agency invoked was that of a train crew exclusively within the jurisdiction of the State of New York. Its business was to shift freight in the Albion yards. If it had been the purpose to pick up this car and to include it in a train to go to some other point in the State of New York, necessary to complete the transportation, a different case would have been presented. But its only purpose in moving this car was to adjust it to the practical requirements of the yard, and the claimant's intestate was employed for this purpose at the particular time of the accident. It seems to us that the case comes within the rule recognized in *Chicago, Burlington & Quincy R. R.* v. *Harrington* (241 U. S. 177) and in *Lehigh Valley R. R. Co.* v. *Barlow* (244 id. 183), and we see no distinction in principle between a car which has been upon a siding several days and one which has been there but a single day. The important fact is that the car has been taken out of its relation to interstate commerce and has become merely a part of the general property of the State, and when moved from one place in the yard by the local engine and crew is simply intrastate commerce and as such governed by the laws of this State. The determination should be reversed, and the case remitted to the State Industrial Commission to be disposed of in accordance with this opinion.

Kiley, J., concurs.